UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SARAH ARCHBOLD
and DONALD W. MARVIN,

                Plaintiffs,

    -against-                                       **11 CV 5796 (SJ)(LB)**

TRISTATE ATM, INC.
and DOES 1-10, inclusive,

                Defendants.
-----------------------------------------------------------X
SARAH ARCHBOLD
and DONALD W. MARVIN,

                Plaintiffs,

    -against-                                       **12 CV 847 (SJ)(LB)**

CASH ON THE SPOT ATM SERVICES, LLC
and DOES 1-10, inclusive,

                Defendants.
-----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

## REPORT AND RECOMMENDATION

        Plaintiffs Sarah Archbold and Donald W. Marvin bring the above-captioned actions pursuant to the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq*. (the EFTA). In virtually identical complaints, plaintiffs allege that defendants Tristate ATM, Inc. and Cash on the Spot ATM Services, LLC charged them a fee for using automatic teller machines (ATMs) operated by defendants without posting a notice of the fee "in a prominent and conspicuous location on or at the [ATM]," as required by the EFTA. Both defendants failed to answer or otherwise defend these actions, and plaintiffs now move for a default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure, seeking an award of $3,350.00 in each action. The Honorable Sterling

1

Johnson, Jr. referred plaintiffs' motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs' motions for a default judgment against defendants should be granted. It is further recommended that a default judgment should be entered against Tristate ATM, Inc. in the amount of $825.00, and that a default judgment should be entered against Cash on the Spot ATM Services, LLC in the amount of $825.00.

## BACKGROUND

On February 11, 2011, plaintiff Donald W. Marvin withdrew twenty dollars from an ATM operated by defendant Tristate ATM, Inc. ("Tristate") located at a Fairfield Inn and Suites in Avenel, New Jersey.[1] See No. 11-cv-5796, Compl. ¶¶ 20, 24 (ECF No. 1); id. Ex. 1. Although Tristate charged Marvin a "terminal fee" of $2.00 in connection with this withdrawal, the ATM did not have a notice posted on or at the machine informing customers that they may be charged a fee for their ATM transactions. Id. ¶¶ 26-27. Approximately five months later, on July 7, 2011, plaintiff Sarah Archbold used the same ATM to withdraw twenty dollars. Id. at ¶ 29; id. Ex. 5. At the time of this transaction, there was no notice posted on or at the ATM apprising customers of the potential fee for using the ATM. Id. ¶ 32. Nonetheless, Tristate charged Archbold a "terminal fee" of $2.00 for her ATM withdrawal. Id. ¶ 31.

On September 25, 2011, in two separate transactions conducted approximately one minute apart, both plaintiffs withdrew twenty dollars from an ATM operated by defendant Cash on the Spot ATM Services, LLC ("Cash on the Spot") located at 216 W. 50th Street, New York, New York. See No. 12-cv-847, Compl. ¶¶ 25, 30 (ECF No. 1); id. Exs. 1, 5. Plaintiffs were

---

[1] The Court deems the factual allegations presented in plaintiffs' complaints as admitted solely for the purposes of this motion. See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (on a motion for default judgment, the court "deems all the well-pleaded allegations in the pleadings to be admitted.").

2

charged a $2.00 "terminal fee" for each withdrawal. Id. ¶¶ 27, 32. When these transactions took place, there was no notice posted on or at the ATM informing customers that a fee would be charged for use of the ATM. Id. ¶¶ 28, 33. Instead, a notice affixed to the ATM indicated that the owner of the ATM charges a "surcharge fee $___." Id.; see also id. Ex. 7.[2] Plaintiffs characterize this notification as "deceptive and inaccurate." Id. at ¶¶ 28, 33.

Notably, plaintiffs do not allege that they were unaware that these fees would be charged, and their pleadings are conspicuously silent on whether plaintiffs affirmatively agreed to pay these $2.00 fees when prompted by the ATMs' on-screen notifications. Instead, plaintiffs preemptively insist that they "need not prove that [they] sustained any actual financial loss, or that [they] relied upon the lack of mandatory disclosure as an inducement to enter into the transaction" in order to recover under the EFTA. Id. at ¶ 14; see also No. 12-cv-847 Compl. ¶ 15.

Plaintiffs commenced their lawsuit against Tristate on November 25, 2011, seeking an award of actual damages in the amount of $4,000 and statutory damages of $1,000 per transaction, as well as reimbursement of their attorney's fees and the costs associated with bringing their lawsuit. See No. 11-cv-5796 (ECF No. 1.) When Tristate failed to answer or otherwise move in response to the Complaint, plaintiffs requested that the Court enter a default against Tristate on April 19, 2012.[3] (ECF No. 5.) The Clerk of Court subsequently noted Tristate's default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (ECF No. 6.) Plaintiffs filed the instant motion for default judgment under Rule 55(b)(2) of the Federal Rules

---

[2] Although plaintiffs submitted a photograph of the notice they allege was affixed to the ATM they used on September 25, 2011, this notice identifies "Alliance ATM Group" as the owner of the ATM, and makes no mention of Cash on the Spot.

[3] According to the affidavit of service plaintiffs filed, Tristate was "dissolved by proclamation pursuant to 203-a of the NYS Tax Law on January 26, 2011." (ECF No. 4.)

of Civil Procedure on May 23, 2012. (ECF No. 7.) On June 4, 2012, the Honorable Sterling Johnson, Jr. referred plaintiffs' motion to me for a Report and Recommendation. (ECF No. 8.)

Meanwhile, plaintiffs filed their lawsuit against Cash on the Spot on February 17, 2012. See No. 12-cv-847 (ECF No. 1). At plaintiffs' request, (ECF No. 4), the Clerk of Court noted Cash on the Spot's failure to respond to the Complaint and entered default on April 17, 2012. (ECF No. 5). Plaintiffs recycled their motion for default judgment under Rule 55(b)(2) for use against Cash on the Spot, and filed the repurposed papers in this action on May 23, 2012. (ECF No. 6). After plaintiffs' lawsuit against Cash on the Spot was reassigned as related to plaintiffs' action against Tristate, the Honorable Sterling Johnson, Jr. referred plaintiffs' second motion for default judgment to me for a Report and Recommendation on August 16, 2012.

In addition to these lawsuits, plaintiffs filed two other nearly identical lawsuits in the Eastern District of New York, which they voluntarily dismissed. See No. 12-cv-845; No. 12-cv-961. Viewed collectively, the complaints filed in plaintiffs' four actions allege that plaintiffs were charged fees in ten separate transactions at four different ATMs, all of which failed to provide a fee notification "on or at the [ATM]" as required by the EFTA. See No. 11-cv-5796 (alleging two transactions at an ATM in Avenel, New Jersey); No. 12-cv-845 (alleging two transactions at an ATM in Queens Village, New York); No. 12-cv-847 (alleging two transactions at an ATM in Manhattan, New York); No. 12-cv-961 (alleging four transactions at an ATM in Queens Village, New York). In what is either a remarkable coincidence or a demonstration of plaintiffs' plan to seek out ATMs lacking the EFTA-required signage and deliberately manufacture claims by withdrawing funds from these machines, the majority of the transactions underlying these four lawsuits all took place on one of four dates in the fall of 2011. See id. All in all, the lawsuits that plaintiffs filed with this Court alleged that they incurred a grand total of

4

$17.00 in unauthorized ATM transaction fees. For what plaintiffs' pleadings uniformly describe as "damages for inconvenience, legal fees, loss of the use of funds and pre-judgment interest," the four lawsuits plaintiffs filed in the Eastern District of New York sought a combined $24,000 in actual and statutory damages, in addition to attorneys' fees and costs. Id.

## DISCUSSION

### I.     Defendants' Liability

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), a plaintiff may request that a default judgment be entered against the defendant. Fed. R. Civ. P. 55(b).

Rule 55(b)(1) of the Federal Rules of Civil Procedure provides that "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). Rule 55(b)(2) requires that "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Here, plaintiffs move for a default judgment under Rule 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). "Accordingly, just because a party is in default, the plaintiff is not

5

entitled to a default judgment as a matter of right." Bravado Intern. Group Merch. Servs., Inc. v. Ninna, Inc., 655 F.Supp.2d 177, 186 (E.D.N.Y. 2009) (citing Erwin DeMartino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). In determining whether to issue a default judgment under Rule 55(b)(2), the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (quoting In re Indus. Diamonds Antitrust Litig., 119 F.Supp.2d 418, 420 (S.D.N.Y. 2000)).

In their lawsuits against Tristate and Cash on the Spot, plaintiffs have alleged the elements necessary to state a claim for violations of the EFTA. Pursuant to the EFTA's fee notification requirements, ATM operators must notify consumers that a fee may be imposed, and the amount of any fee, both "on or at the [ATM]" and "on the screen . . . or on a paper [receipt]." 15 U.S.C. § 1693b(d)(3)(B); see also Mabary v. Hometown Bank, N.A., 276 F.R.D. 196, 199 n.1 (S.D. Tex. 2011) ("Hometown's compliance with the on screen notice requirements of 15 U.S.C. § 1693b(d)(3)(B)(ii) is immaterial to Plaintiff's claim for statutory damages because the EFTA requires that a fee notice appear both 'on or at' an ATM machine and 'on the screen' or paper receipt and prohibits the imposition of a fee unless both prongs of the notice requirement are satisfied."). In the absence of the fee notifications required by the EFTA, "[n]o fee may be imposed by any [ATM] operator in connection with any electronic fund transfer." 15 U.S.C. § 1693b(d)(3)(C).[4] Plaintiffs' allegations that the ATMs operated by defendants failed to provide

---

[4] Pursuant to the EFTA, the Board of Governors of the Federal Reserve System issued regulations mirroring the fee notification requirements in the EFTA. See 12 C.F.R.§ 205.16(b) (requiring financial institutions charging

6

the statutorily required fee notification "on or at the [ATM]," and that defendants imposed a $2.00 "terminal fee" in connection with plaintiffs' withdrawals, suffice to state a cause of action under the EFTA.[5]  See No. 11-cv-5796, Compl. ¶¶ 26, 27, 31, 32; No. 12-cv-847, Compl. ¶¶ 27, 28. Because plaintiffs' allegations are deemed admitted by virtue of defendant's failure to appear, entry of a default judgment against both defendants is appropriate.

## II.     Damages

It is axiomatic that, although a default constitutes an admission of well-pleaded factual allegations, those allegations relating to damages are not deemed true by virtue of a defendant's failure to defend. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint, with respect to the amount of the damages are not deemed true."). Instead, a plaintiff seeking a default judgment under Rule 55(b)(2) has the burden to prove damages to the Court with a "reasonable certainty." Id. (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). While the Court "may conduct hearings or make referrals . . . [to] determine the amount of damages or establish the truth of any allegation by evidence," Fed. R. Civ. P. 55(b)(2), "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Century 21 Real Estate LLC v. Bercosa Corp., 666 F.Supp.2d 274, 285 (E.D.N.Y. 2009).

---

fees for electronic fund transfers or balance inquiries to "[p]rovide notice that a fee will be imposed" and "[d]isclose the amount of the fee."); 12 C.F.R. § 205.16(c)(1) (requiring fee notice to be posted "in a prominent and conspicuous location on or at the automated teller machine"); 12 C.F.R. § 205.16(c)(2) (requiring notice "on the screen of the automated teller machine or [] on paper, before the consumer is committed to paying a fee.").

[5]     Contrary to plaintiffs' assertion that "[t]he EFTA imposes strict liability upon ATM operators which fail to comply with its disclosure requirements," see Compl. ¶ 14, the statute expressly provides that an ATM operator shall have no liability for failure to comply with the fee notification requirements if the notice posted "on or at" the ATM "is subsequently removed, damaged, or altered by any person other than the operator of the [ATM]." 15 U.S.C. § 1693h(d). Similarly, "a person may not be held liable in any action brought under [the EFTA] if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1693m(c).

In support of their claim for damages, plaintiffs submit photographs of the ATMs at issue, copies of their ATM receipts, affidavits of their counsel regarding his experience and customary fees, and time sheets purporting to show the time counsel spent litigating these lawsuits. See No. 11-cv-5796, Compl. Exs. 1-8 (ECF No. 1), Motion for Default Judgment (ECF No. 7-1, 7-4, 7-5); No. 12-cv-847, Compl. Exs. 1-7 (ECF No. 1), Motion for Default Judgment (ECF No. 6-1, 6-5, 6-6). These documents, combined with the virtually identical pleadings plaintiffs filed in their other lawsuits, do little to prove plaintiffs' damages with "reasonable certainty." What is abundantly clear from these submissions, however, is that plaintiffs' actions are among the hundreds of lawsuits filed across the country in a transparent attempt to capitalize on the EFTA's award of statutory damages. Through serial transactions conducted at ATMs that lack the EFTA-required signage (whether due to the ATM operator's failure or to the strategic removal of the physical fee notice), plaintiffs can manufacture claims, file suit in federal court, and either collect the statutorily-mandated damages and fees or exact a settlement offer.[6] As one lawmaker explained, "some individuals have seen the potential to make a quick buck off a frivolous claim and have begun to remove stickers from ATMs across the country, thereby placing financial institutions and merchants out of compliance [with the EFTA]." 158 Cong. Rec. H4665 (daily ed. July 9, 2012) (statement of Rep. Luetkemeyer).

In recognition of the potential for abuse created by the EFTA's fee notification provision, on July 9, 2012, the United States House of Representatives passed legislation to amend the

---

[6] Plaintiffs Archbold and Marvin's lawsuits regarding noncompliant ATMs in the New York area are eclipsed by those of plaintiffs in other jurisdictions. For example, since 2010, Wallace Stilz III has filed sixteen separate lawsuits in the Illinois federal courts alleging deficient ATM fee notifications. See Nos. 10-cv-1996, 10-cv-1997, 10-cv-1998, 10-cv-2087, 11-cv-4985, 11-cv-5519, 11-cv-5520, 11-cv-5631, 12-cv-3045, 12-cv-4389, 12-cv-50132 (N.D. Ill.); Nos. 11-cv-1145, 11-cv-1146, 11-cv-3096, 12-cv-2117 (C.D. Ill.); 12-cv-628 (S.D. Ill). Other plaintiffs have demonstrated comparably litigious tendencies. See Pfeffer v. HSA Retail, Inc., No. SA-11-cv-959-XR, 2012 WL 394645, at *1 (Feb. 6, 2012) (noting that, on the same day as filing his complaint, "Plaintiff filed eight other lawsuits against eight different defendants, each alleging the same violation of the EFTA [fee notification requirement]"); Buechler v. Your Wine & Spirit Shoppe, Inc., 846 F.Supp.2d 406, 412 n.4 (D. Md. 2012) (collecting plaintiff's seven EFTA lawsuits in the District of Maryland).

EFTA to eliminate the requirement that ATM operators post fee notification "on or at" the ATM, thereby limiting the fee disclosure requirement to the screen of the ATM. See H.R. 4367, 112th Cong. (2012); see also 158 Cong. Rec. H4665 (daily ed. July 9, 2012) (statement of Rep. Luetkemeyer) ("The premise of this bill is simple: to eliminate an outdated and unnecessary regulatory burden facing merchants and financial institutions while continuing to ensure consumer protections for all ATM users through required on-screen fee disclosures."). Until this legislation is signed into law, however, federal courts across the country will still be called upon to adjudicate claims such as plaintiffs' here.

A. **Actual Damages**

By plaintiffs' own admission, both Tristate and Cash on the Spot charged them $2.00 for each use of defendants' ATMs. After deliberately incurring these fees, plaintiffs filed complaints seeking an award of actual damages in the amount of $4,000.00, on the theory that plaintiffs "sustained actual damages as the result of the defendants' failure to comply with EFTA including damages for inconvenience, legal fees, loss of the use of funds and prejudgment interest." No. 12-cv-847, Compl. ¶ 42; No. 11-cv-5796, Compl. ¶ 42. While there are no reported cases from this district considering the award of actual damages for an ATM operator's failure to provide fee notification "on or at" the ATM in violation of the EFTA, courts elsewhere have held that, in order to be entitled to actual damages, a plaintiff must plead and prove detrimental reliance. See, e.g., Voeks v. Pilot Travel Ctrs., 560 F.Supp.2d 718, 721-24 (E.D. Wis. 2008) ("In short, the remedy that a customer has under the statute for the payment of a fee after inadequate notice is to seek those statutory damages under § 1693m(a)(2)(A) and then to seek any actual damages . . . . To show actual damages under § 1693m(a)(1) a plaintiff must plead and prove detrimental reliance."); Brown v. Bank of America, 457 F.Supp.2d 82, 90 (D.

9

Mass. 2006) (noting that "[t]here are no reported cases interpreting the actual damages provision of EFTA," and holding that "[i]n order to recover actual damages, Plaintiffs must establish causation of harm through detrimental reliance"); Polo v. Goodings Supermarkets, 232 F.R.D. 399, 408 (M.D. Fla. 2004) (recommending denial of class certification for lack of predominance where "court would have to determine which ATM customers were actually harmed or adversely affected"); see also Martz v. PNC Bank, N.A., No. Civ A 06-1076, 2006 WL 3840354, at *5 (W.D. Pa. Nov. 30, 2006) ("The few reported cases that have discussed the actual damages provision of EFTA have found that to recover actual damages, a plaintiff must establish causation of harm in the form of detrimental reliance.").

Notwithstanding their claim that defendants' alleged failure to post a fee notification on their ATMs caused them "inconvenience" and "loss of funds" worth $4,000.00 in actual damages, plaintiffs do not, and presumably could not, establish the facts necessary to entitle them to actual damages. Although the Court does not doubt that plaintiffs' efforts to seek out ATMs for the purpose of manufacturing EFTA violations involves inconvenience, legal fees, and the loss of funds, the Court finds that these damages are of plaintiffs' own making.

    **B.**     **Statutory Damages**

On their motion for default judgment, plaintiffs abandon the fiction that they sustained actual damages through their strategic ATM transactions. Instead, presumably because the EFTA does not require a consumer to suffer any actual injury in order to recover statutory damages, plaintiffs seek to recover pursuant to 15 U.S.C. § 1693m, which provides in part that "any person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to such consumer in an amount . . . not less than $100 and not more than

$1,000."[7] See 15 U.S.C. § 1693m(a) (calculating liability as "the sum of (1) any actual damage sustained by such consumer as a result of such failure; (2)(A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; . . . (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.").

The EFTA requires a court determining the amount of liability to "consider, among other relevant factors . . . the frequency and persistence of noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional." 15 U.S.C. § 1693m(b)(1). According to plaintiffs' motions for default judgment, they "should be awarded the maximum statutory damage amount of $1,000.00 each because the Defendant's failure to plead has deprived Plaintiffs the opportunity to conduct discovery into these factors." See No. 11-cv-5796, ECF No. 7-1, ¶ 27; No. 12-cv-847, ECF No. 6-1, ¶ 26.

This Court disagrees. Moreover, notwithstanding plaintiffs' assertion that their lawsuits "persuade[] responsible financial institutions and ATM operators to 'comply with the spirit and letter of the law,'" the Court is disinclined to recommend that plaintiffs be rewarded for their efforts to gain a windfall through opportunistic litigation in the federal court system. See No. 11-cv-5796, Compl. ¶ 15; No. 12-cv-847, Compl. ¶ 16. Put simply, the record reflects that plaintiffs sought out and used defendants' ATMs because they wanted to file EFTA lawsuits and collect statutory damages. Nonetheless, the Court is constrained to award damages mandated by the statute, which requires that each defendant that fails to comply with the statute's fee notification

---

[7] Although plaintiffs' motion attempts to rewrite § 1693m(a), claiming that it "provides for a statutory damage amount of 'not less than $100 and not more than $1000' *for each violation*," the statutory language unambiguously sets the range of statutory damages to each consumer for the *individual action* as a whole. See Stilz v. Global Cash Network, Inc., No. 10-cv-1998, 2010 WL 3975588, at *4-5 (N.D. Ill. Oct. 7, 2010) ("The EFTA's plain language is clear that a plaintiff may recover a maximum of $1,000 in statutory damages. . . . If Congress had intended to provide for other, additional statutory damages—for example, up to $1,000 per violation, or $1,000 for each offending ATM—it could have done so. . . .[T]he court finds that the EFTA permits statutory damages on only a per-plaintiff basis.").

11

requirements "is liable to such consumer in an amount . . . not less than $100." 15 U.S.C. § 1693m(a). Accordingly, I recommend that plaintiff Sarah Archbold and plaintiff Donald W. Marvin each be awarded $100 in statutory damages in their action against Tristate, and in their action against Cash on the Spot.

        C.        <u>**Attorney's Fees and Costs**</u>

Plaintiffs also seek an award of attorney's fees and costs associated with litigating these two actions. Specifically, plaintiffs seek $1,000.00 in attorney's fees in each action, as well as the $350 cost of filing each lawsuit. Plaintiffs' counsel submitted the identical affidavit in each of these two cases in support of this claim for fees; both affidavits state that "the total attorney time spent in this case is 2 hours and 30 minutes, which when billed at $400.00, results in a corresponding lodestar value of $1,000.00." No. 11-cv-5796, ECF No. 7-4, ¶ 17; No. 12-cv-847, ECF No. 6-4, ¶ 17.

The EFTA makes clear that "any person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to such consumer . . . in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1693m(a). In determining the amount of attorney's fees to award a prevailing party, the Court must calculate the "presumptively reasonable fee." <u>Simmons v. N.Y. City Transit Auth.</u>, 575 F.3d 170, 172 (2d Cir. 2009). To determine this fee, the Court calculates "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). A reasonable rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . where the district court sits." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 190 (2d

12

Cir.2007); see also Blum v. Stenson, 465 U.S. 886, 896 (1984) ("[T]he requested rates [must be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

The Court should also consider the following factors in determining the reasonable hourly rate:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill, 522 F.3d at 184. The burden is on the party moving for attorney's fees to show evidence of the hours spent and to justify the hourly rate sought. See Hensley, 461 U.S. at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."); Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (noting that "[t]he party seeking the award bears the burden of documenting the hours reasonably spent by counsel").

In the Eastern District of New York, hourly rates for partners range from $200 to 400 per hour, depending on the nature of the action, extent of legal services provided, and experience of the attorney. See Santiago v. Coco Nail HB, Inc., No. 10-cv-3373, 2012 WL 1117961, at *4 (E.D.N.Y. Mar. 16, 2012) (noting that "courts have found that the prevailing hourly rates for law firm partners in this district are between $300 and $400," but awarding fees based on an hourly rate of $275 where "[t]he nature of the work performed in this matter was relatively straightforward, particularly since the defendant defaulted and no novel or complex issues are

raised in the complaint."); Trs. of the Local 813 I.B.T. Ins. Trust Fund v. Sprint Recycling, Inc., No. 09-cv-4435, 2010 WL 3613839, at *4 (E.D.N.Y. Aug. 6, 2010) (noting that, "[i]n the Eastern District of New York, reasonable hourly rates for attorneys have ranged from $200 to $350 an hour for partners"); Crapazano v. Nations Recovery Ctr., Inc., No. 11-cv-1008, 2011 WL 2847448, at *2 (E.D.N.Y. June 29, 2011) (noting hourly rates of $200–$350 for partners, $200–$250 for senior associates with four or more years of experience, and $100–$150 for junior associates with one to three years of experience), adopted by 2011 WL 2837415 (E.D.N.Y. July 14, 2011).

In light of the case-specific factors articulated by the Second Circuit in Arbor Hill, the $400.00 hourly rate requested by plaintiffs' counsel here is not reasonable. See, e.g., Alveranga v. Winston, No. 04-cv-4356, 2007 WL 595069, at *7 (E.D.N.Y. Feb. 22, 2007) ("Rates awarded . . . in cases not involving complex issues tend, on average, to be lower."). Plaintiffs' counsel's affidavit concedes that a district court in Maryland recently awarded him fees based on an hourly rate of $275.00; the Court finds that this rate to be reasonable on the facts presented by the instant lawsuits.

The Court must also evaluate whether the hours expended by plaintiffs' counsel are reasonable. The affidavits counsel submitted in both actions attached time reports – both dated May 23, 2012 – purporting to detail the 2 hours and 30 minutes spent litigating each of plaintiffs' lawsuits. The Court finds that, in light of counsel's extensive experience litigating EFTA fee notification claims, this time expenditure is overstated. Plaintiffs' counsel has filed the identical lawsuit five times in this district,[8] as well as numerous times in other districts. See, e.g., Buechler v. Your Wine & Spirit Shoppe, Inc., 846 F.Supp.2d 406, 412 n.4 (D. Md. 2012) (citing

---

[8] Plaintiffs' counsel also represented the plaintiff in Leone v. American Community Bank, No. 11-cv-6181, yet another EFTA fee notification case filed in the Eastern District of New York on December 19, 2011.

14

seven EFTA lawsuits filed by one plaintiff through the same counsel appearing here). Because preparing the pleadings and other filings submitted in connection with these lawsuits involves little more than inserting the plaintiff-specific allegations into a ready-made template – or, as is the case with counsel's affidavit in support of his claimed fees, simply filing a single document in multiple actions – the time expended on these tasks should be minimal. See Kinder v. Northwestern Bank, No. 10-cv-405, 2012 WL 2886688, at *5 (W.D. Mich. June 5, 2012) (noting that where "plaintiff's counsel has handled over thirty ATM notice cases, [t]his experience must necessarily translate into economies of scale. For example, drafting the thirtieth complaint should require minutes, not hours . . . ."); id. at *7 ("[T]his is one of dozens of similar cases that involve the same legal and class action issues. The real time expenditure, and legal work, is necessarily expended in the first one or two cases. Thereafter, handling such litigation involves an assembly-line, cookie-cutter approach. Complaints, motions for class certification or summary judgment, and settlement documents are demonstrably similar and should involve no substantial additional expenditure of time."). The Court finds that plaintiffs' counsel could not have reasonably expended more than one hour on each of these actions. Accordingly, the Court recommends that plaintiffs be awarded $275.00 in attorney's fees in each of their lawsuits.

Finally, pursuant to 15 U.S.C. § 1693m(a)(3), the Court recommends that plaintiffs be awarded $350.00 in each action, the costs of filing their lawsuits.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiffs' motions for a default judgment against defendants should be granted. It is further recommended that a default judgment should be entered against Tristate ATM, Inc. in the amount of $825.00 as follows:

15

$200.00 in statutory damages; $275.00 in attorney's fees; and $350.00 in costs.  It is further recommended that a default judgment should be entered against Cash on the Spot ATM Services, LLC in the amount of $825.00 as follows: $200.00 in statutory damages; $275.00 in attorney's fees; and $350.00 in costs.  Plaintiffs' counsel shall serve a copy of this Report and Recommendation on defendants at their last known addresses and file proof of service with the Court forthwith.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections must be made within the fourteen-day period.  Failure to file a timely objection to this Report generally waives any further judicial review.  Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir.2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir.1989); Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

SO ORDERED.

                                                             /s/
                                            LOIS BLOOM
                                            United States Magistrate Judge

Dated: September 7, 2012
       Brooklyn, New York